Jennifer Liakos (Cal. Bar. No. 207487)
Napoli Shkolnik PLLC
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Fax: (646) 843-760
Email: jliakos@napolilaw.com

Salvatore C. Badala (to be admitted *Pro Hac Vice*)
Paul B. Maslo (to be admitted *Pro Hac Vice*)
Napoli Shkolnik PLLC
360 Lexington Avenue
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: sbadala@napolilaw.com
        pmaslo@napolilaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENETTA L. BRACY, individually and on behalf of all others similarly-situated,<br><br>Plaintiffs,<br><br>v.<br><br>DG HOSPITALITY VAN NUYS, LLC, THE SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., DAMES N' GAMES, JOHN DOES #1-10, AND XYZ Corporations #1-10,<br><br>Defendants. | **Case No. 5:17-cv-854**<br><br>**COMPLAINT FOR VIOLATIONS OF FLSA AND STATE LAWS**<br><br>**COLLECTIVE ACTION AND CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jenetta L. Bracy ("Plaintiff" or "Bracy"), on behalf of herself and all others similarly situated, bring this Collective Action and Class Action against

-1-

Defendants DG Hospitality Van Nuys, LLC, The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., Dames N' Games, John Does #1-10, XYZ Corporations #1-10 (collectively, "Spearmint Rhino" or "Defendants"), and in support thereof aver the following based upon personal information and investigation of her counsel:

## **INTRODUCTION**

1. This is a Collective Action and Class Action lawsuit brought by Plaintiff on behalf of herself and current and former Defendant employees who work, or worked, as exotic dancers at Defendants' nightclubs.

2. All current and former exotic dancers were denied their fundamental right under applicable state and federal wage and hour laws in a similar and common way because Defendants' simply do not pay their employees anything.

3. Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA") to rectify Defendants' well-known and long-standing abuse of the federal minimum wage and overtime standards. Plaintiff brings this action as a Collective Action pursuant to 29 U.S.C. § 216 (b).

4. Plaintiff also brings this action under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210, the California Labor Code and related regulations including the California Private Attorneys General Act, ("PAGA"), Cal. Wage Order No. 10-2001; Cal. Labor Code §§ 200-2699.5, (collectively, "California State

Law"), for Defendants' violations of California State Law including: (1) failure to pay employees working in California state-mandated minimum wages, (2) failure to pay employees working in California overtime compensation at a rate of one and one-half times the regular rate of pay for all hours worked over forty per week, or over eight per day, or for the first eight hours of work on the seventh consecutive day of work in a workweek (3) failure to pay employees working in California overtime compensation at a rate of twice the regular rate of pay for all hours worked in excess of twelve hours in one day, and for any hours worked in excess of eight hours on the seventh consecutive day of work in a workweek, (4) failure to pay employees working in California all wages due within the time specified by law, (5) failure to afford their employees working in California with proper meal and rest periods, (6) for recordkeeping violations explained in greater detail below, and (7) for statutory penalties assessed in connection with PAGA. Plaintiff brings these claims as a Class Action pursuant to FED. R. CIV. P. 23.

5. Plaintiff is a former employee of Spearmint Rhino who worked as an exotic dancer at Defendants' nightclub in Los Angeles, California.

6. While employed by Defendants, Plaintiff did not receive the FLSA-mandated minimum wage for all hours worked, nor did she receive time-and-one-half her regular rate of pay for each hour she worked over forty hours in a given workweek.

7. Specifically, Defendants never paid Plaintiff anything for the time she worked while employed by Defendants. Plaintiff was actually required to pay Defendants in the form of a "house fee" or "overhead fee" upon entrance to the nightclub and tips.

8. Plaintiff's only compensation came in the form of tips from patrons. However, Plaintiff was required to divide these tips with Defendants and other employees at the nightclub.

9. Therefore, Defendants often failed to compensate Plaintiff and other workers like her at federal- and state-mandated minimum wage rates, and failed to provide Plaintiff and others like her with commensurate overtime when they worked over forty hours in a given workweek, or per California State Law, over eight hours in a given workday.

10. Defendants DG Hospitality Van Nuys, LLC, The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., and Dames N' Games own and manage gentlemen's clubs located throughout the country operating under the name "Spearmint Rhino."

11. Plaintiff, on behalf of herself and all others similarly situated, alleges that Defendants are joint employers and are jointly and severally liable for her damages and those of the Collective and Class Action Members.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA.

13. The Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with an amount in controversy in excess of $5,000,000, exclusive of interest and costs, and at least one member from the class is a

citizen of a state different from at least one Defendant. Alternatively, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14. This Court is empowered to issue a declaratory judgment with respect to all claims pursuant to 28 U.S.C. §§ 2201 & 2202.

15. This Court has personal jurisdiction over Defendants because Defendants do business in California and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in California and in this District.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 et seq. because (i) many of the acts and transactions giving rise to this action occurred in this District; (ii) Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution, and sale of its services in this District; and (iii) Defendants currently do substantial business in this District.

## PARTIES

### A. PLAINTIFF JENETTA L. BRACY

17. Plaintiff is an individual residing in North Hollywood, California.

18. Plaintiff's written consent to participate in this action is attached to this Complaint as "Exhibit 1."

**B. Defendant DG Hospitality Van Nuys, LLC**

19. Defendant DG Hospitality Van Nuys, LLC is a California corporation headquartered at 1875 Tandem Way, Norco, California 92860. Defendant DG Hospitality Van Nuys, LLC does business as The Spearmint Rhino.

**C. Defendant The Spearmint Rhino Companies Worldwide, Inc.**

20. Defendant The Spearmint Rhino Companies Worldwide, Inc. is a Nevada corporation doing business in California.

**D. Defendant Spearmint Rhino Consulting Worldwide, Inc.**

21. Defendant Spearmint Rhino Consulting Worldwide, Inc. is a Delaware corporation doing business in California.

**E. Defendant Dames N' Games**

22. Defendant Dames N' Games is a California corporation. Defendant Dames N' Games does business as The Spearmint Rhino, Spearmint Rhino's Dames N' Games, and Spearmint Rhino's Dames LA.

**F. Defendants John Does #1-10**

23. Defendants John Does 1-10 are fictitious names for individuals who may be responsible for the wrongful conduct and labor practices that caused harm to the plaintiff, the true names and capacities of which are unknown to plaintiff, but plaintiff will amend her Complaint when and if the true names of said defendants become known to her.

**G. Defendants XYZ Corporations #1-10**

24. Defendants XYZ Corporations 1-10 are fictitious names for companies, partnerships, LLCs, joint ventures and/or corporations who may be responsible for the wrongful conduct and labor practices that caused harm to the plaintiff, the true names and capacities of which are unknown to plaintiff, but plaintiff will amend her Complaint when and if the true names of said defendants become known to her.

**FACTUAL ALLEGATIONS**

**A. Background**

25. On July 13, 2009, a group of exotic dancers, like Plaintiff, filed a similar lawsuit against Spearmint Rhino for wage violations under federal and state laws. *See Tracy Dawn Trauth, et al. v. Spearmint Rhino Companies Worldwide, Inc., et al.*, 5:09-cv-01316-VAP-DTB, (C.D. Cal.) ("*Trauth*").

26. The exotic dancers in *Trauth* lawsuit alleged that they were misclassified as independent contractors and were entitled to their wages for all of the hours the worked for Defendants.

27. On November 7, 2012, the Court in *Trauth* issued an amended order granting plaintiff's renewed motion for final approval of the settlement. (*See* attached Exhibit 2, Amended Order Granting Plaintiff's Renewed Motion for Final Approval of Class Action Settlement and Granting in Part Plaintiffs' Renewed Motion for Attorneys" Fees.)

28. One of the relevant provisions of the Settlement Agreement required that "[w]ithin six months, the Clubs will no longer treat Dancers as independent contractors or lessees; instead the Clubs will treat Dancers 'as either employees or owners (e.g. shareholder, limited partner, partner, member or other type of ownership stake)' of any Clubs in existence at the time of settlement. (*Id.* at 3.) As a result of this provision, Defendants began classifying its exotic dancers, like Plaintiff, as "partners" or "members" of a limited liability company, DG Hospitality Van Nuys, LLC.

29. Although Defendants now classify their exotic dancers as "partners" or "members," the exotic dancer employees do not have any real ownership interest in DG Hospitality Van Nuys, LLC.

30. Defendants' exotic dancers, like Plaintiff, still work as employees for Spearmint Rhino. Defendants are solely using the classification of "partners" or "members" so that they can continue to avoid paying these employees according to applicable federal and state wage laws.

31. Defendants' scheme to avoid its federal and state wage obligations is not the only Settlement Agreement violation by Defendants. In *Trauth*, the Judge ordered, "In California, Dancers will no longer be charged stage fees (i.e., fees a Dancer pays for the privilege of performing at a Club)." (Exh. 2, at 3.) However, Defendants still require their exotic dancer employees, including Plaintiff, to pay fees for the privilege at Spearmint Rhino locations.

32. Specifically, Defendants required Plaintiff, and its exotic dancer employees, to pay (i) a "house fee" or "overhead fee" (ii) tip the disc jokey, and (iii) tip the security guards.

33. Defendants set the following payment schedule for the "house fee" or "overhead fee":

    a.  If the exotic dancer began work before 3:00PM, the dancer would have to pay a $10 "house fee" or "overhead fee";

    b.  If the exotic dancer began work before 6:30PM, the dancer would have to pay a $20 "house fee" or "overhead fee";

    c.  If the exotic dancer began work before 8:00PM, the dancer would have to pay a $30 "house fee" or "overhead fee";

    d.  If the exotic dancer began work before 10:00PM, the dancer would have to pay a $40 "house fee" or "overhead fee"; and

    e.  If the exotic dancer began work before 11:00PM, the dancer would have to pay a $60 "house fee" or "overhead fee".

**B. PLAINTIFF BRACY**

34. Plaintiff was employed by Defendants as an exotic dancer at their 14626 Raymer Street, Van Nuys, CA 91405 location from approximately October 15, 2015 until approximately February 25, 2017.

## C. DEFENDANTS TREAT EXOTIC DANCERS LIKE EMPLOYEES

35. Since the Court's Order in *Trauth*, Defendants have their exotic dancer employees enter into illusory contractual engagements in order to give the appearance that the exotic dancers are as "partners" or "members" of a limited liability company, DG Hospitality Van Nuys, LLC.

36. Any contract which attempts to have workers in the Collective or Class waive, limit or abridge their statutory rights to be treated as an employee under FLSA and/or California State Law is void, unenforceable, unconscionable and contrary to public policy.

37. Workers in the Collective or Class cannot validly "elect" to be treated as partners or members of a limited liability company instead of employees.

38. Nor can workers in the Collective or Class agree to be paid less than the minimum wage.

39. However, the agreements that the exotic dancers are forced to sign upon being hired with Spearmint Rhino cannot mask the fact that nothing has really changed in Spearmint Rhino's operations since the Court's Order in *Trauth*.

40. Specifically, Defendants use many, if not most, of the same kinds of documents, policies, and procedures found to create an employer/employee relationship in other exotic dancer cases with respect to Plaintiff and Spearmint Rhino's other exotic dancers.

41. Defendants' exotic dancer employees do not have any real decision-making authority, do not share equitably in the profitability of Spearmint Rhino, and do not have the right to control Spearmint Rhino management. In short, the exotic dancer employees are not partners or members of Spearmint Rhino in any sense.

42. The exotic dancer employees, like Plaintiff, remain economically dependent and under the complete control and direction of Defendants, but are paid no wages in connection with that work.

43. Collective and Class members' sole source of income while working at for Defendants have been tips given to them by patrons, (*i.e.* table dance tips and stage dance tips).

44. Defendants directly or indirectly employed and exercised significant control over the wages, hours and working conditions of the exotic dancers in the Collective and Class.

45. At all relevant times, all Defendants have been the joint employers of Plaintiffs and members of the Collective and Class under the FLSA and California State Law.

46. Plaintiff's and the Collective and Class members' employment for one Defendant is not completely disassociated from their employment by the other Defendant. DG Hospitality Van Nuys, LLC, The Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., and Dames N' Games

do not act entirely independent of each other and are not completely dissociated with respect to the employment of Plaintiff and the Class.

47. The Spearmint Rhino Companies Worldwide, Inc. and Spearmint Rhino Consulting Worldwide, Inc. maintain significant control over Plaintiff and other Collective and Class members while working for Defendants.

48. The Spearmint Rhino Companies Worldwide, Inc. and Spearmint Rhino Consulting Worldwide, Inc. play significant roles in establishing, maintaining, and directing the employment policies that are to be applied to the Collective and Class members while working for Defendants.

49. The Spearmint Rhino Companies Worldwide, Inc. and Spearmint Rhino Consulting Worldwide, Inc. benefit financially from the work the Collective and Class members perform while working.

50. Additionally, joint employers like DG Hospitality Van Nuys, LLC and Dames N' Games act directly or indirectly in the interests of the Spearmint Rhino Companies Worldwide, Inc. and Spearmint Rhino Consulting Worldwide, Inc. in relation to any supervision they provided Plaintiff and the other dancers in the Collective and Class.

51. As joint employers of Plaintiffs and members of the Collective and Class, the Spearmint Rhino Companies Worldwide, Inc. and Spearmint Rhino Consulting Worldwide, Inc. are responsible both individually and jointly for compliance with all of the applicable provisions of the FLSA and California State Law. 29 C.F.R. §791.2(a) and (b).

52. During the relevant time period, the employment terms, conditions and policies that applied to Plaintiff were the same as those applied to the other Collective and Class members who worked as exotic dancers at Defendants' nightclubs.

53. Throughout the relevant time period, Defendants' policies and procedures regarding the classification of all exotic dancers, including Plaintiff, at Defendants' nightclubs and treatment of dance tips were the same.

54. During the relevant time period, no Collective or Class member received any wages or other compensation from Defendants. Members of the Collective and Class generated their income solely through the tips received from customers when they performed exotic table, chair, couch, lap and/or VIP room dances.

55. All monies Collective and Class members like Plaintiff received from customers when they performed exotic dances were tips, not wages or service fees.

56. Tips belong to the person they are given to. Table dance tips were given by patrons directly to dancers in the Class and therefore, belong to dancers in the Collective and Class, not Defendants. Cal. Labor Code § 350(e) provides, "

> 'Gratuity' includes any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for services rendered or for goods, food, drink, or articles sold or served to the patron. Any *amounts paid directly by a patron to a dancer employed by an employer . . . shall be deemed a gratuity*. (emphasis added).

57. Defendants' misclassification of Plaintiff and other Collective and Class members as "partners" or "members" were designed to deny the Collective and Class

members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to the Collective and Class member by customers, and done to enhance Defendants' profits at the expense of the Collective and Class.

58. Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

59. The totality of circumstances surrounding the employment relationship between Defendants and the exotic dancers in the Collective and Class working at the nightclubs establishes economic dependence by the exotic dancers on Defendants and employee status.

60. Here, as a matter of economic reality, Plaintiff and all other Collective and Class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendants. The dancers are not engaged in occupations or businesses distinct from that of Defendants. Rather, their work is the basis for Defendants' business. Defendants obtain the customers who desire exotic dance entertainment and provide the workers who conduct the exotic dance services on behalf of Defendants. Defendants retain pervasive control

over the nightclub operation as a whole, and the dancer's duties are an integral part of the operation.

### 1. Degree of Control – Defendants Exert Control as Employers of Plaintiff and the Collective and Class Members.

61. Plaintiff and other members of the Collective and Class do not exert control over a meaningful part of the nightclub business and do not stand as separate economic entities from Defendants. Defendants exercise control over all aspects of the working relationship with their exotic dancer employees.

62. Plaintiff and the Collective and Class Members' economic status is inextricably linked to conditions over which Defendants have complete control. Exotic dancer employees of Defendants are completely dependent on Defendants for their income.

63. Spearmint Rhino controls all of the advertising and promotion without which Plaintiff and the Collective and Class Members could not survive economically.

64. Moreover, Defendants create and control the atmosphere and surroundings at Spearmint Rhino locations, the existence of which dictates the flow of customers into Spearmint Rhino nightclubs. The exotic dancers have no control over the customer volume or atmosphere at Spearmint Rhino clubs.

65. Defendants continue to employ guidelines and rules dictating the way in which their exotic dancer employees, including Plaintiff and the Collective and Class Members, must conduct themselves.

66. Specifically, Defendants controlled that outfits Plaintiff could wear.

67. For example, Plaintiff, and all exotic dancers, was required to wear heels and restricted from wearing G-string underwear or transparent bras.

68. Defendants set the hours of operations, the lengths of shifts their exotic dancer employees must work, the show time during which an exotic dancer may perform, and sets minimum dance tips.

69. Defendants also determine the sequence in which a dancer may perform on stage during her stage rotation; the themes of dancers' performances, including their costuming and appearances; their conduct at work (*e.g.*, that they should be on the floor as much as possible when not on stage to mingle with club patrons); tip splits; and all other terms and conditions of employment.

70. Defendants require that their dancers work a minimum number of shifts each week, each shift comprising a set number of hours. Exotic dancer employees are required to report in and report out at the beginning and end of every shift. If an exotic dancer employee arrives late, leaves early, or misses a shift, she is subject to a fine, penalty, or reprimand by Defendants.

71. Specifically, Plaintiff, and all exotic dancers, were required to work a minimum of seven hours per shift.

72. Also, Plaintiff, and all exotic dancers, were required to perform a minimum of five lap and/or VIP dances per shift.

73. When Plaintiff did not meet her minimum of five lap and/or VIP dances per shift, she was terminated by Defendants.

74. Defendants routinely schedule their exotic dancer employees to work in excess of forty hours per week and knowingly permit dancers to work in excess of forty hours per week regularly. Defendants also routinely schedule their exotic dancer employees to work in excess of eight hours in a day and knowingly permit dancers to work in excess of eight hours in a day with frequency.

75. Specifically, Plaintiff would routinely work forty-six hours per week.

76. Defendants, not exotic dancers, set the minimum tip amount that exotic dancer employees must collect from patrons when performing dances. Defendants announce the minimum tip amount to patrons in the club wishing to receive the dance entertainment.

77. Specifically, Defendants set the lap dance price at $20 per song and the VIP dance price at $150 for every fifteen minutes.

78. The entire sum a dancer receives from a patron for a dance is not given to Defendants and taken into its gross receipts. Instead, the dancers keep their share of the payment under the tip share policy and pay over to Defendants the portion they demand as their share, which they now term "rent and/or overhead." Defendants' aforementioned portion bears no actual relation to expenses associated with rent and/or overhead. For example, for a table dance, Plaintiff would be required to pay the club a portion of the minimum tip set by Defendants once collected from a patron of the club.

79. Defendants establish the split or percentage, which each exotic dancer employee is required to pay to Spearmint Rhino for each type of dance they may perform during their shift. In addition, amounts must be shared with disc jockeys, door staff, and other employees as part of Defendants' tip sharing policy. Further, exotic dancer employees are expected to assist Defendants in selling drinks during their shift.

80. Dancers are also required to help sell goods (such as Spearmint Rhino t-shirts, hats, and calendars) bearing the Spearmint Rhino logo to patrons as part of their job duties performing table dances.

**2. Relative Investment – Spearmint Rhino's Relative Investment in Defendants' Operations Exceeds that of Plaintiff and the Collective and Class Members.**

81. Plaintiff's relative investment is minor when compared to the investment made by Defendants.

82. Plaintiff, like all other exotic dancer employees of Spearmint Rhino, has made no capital investment in the facilities, advertising, maintenance, sound systems, lights, food, beverage, inventory, or staffing at Defendants' club. A dancer's investment is limited to expenditures on costumes or makeup. But for Defendants' provision of the lavish club work environment, the dancers would earn nothing.

**3. Opportunity for Profit and Loss – Plaintiff and the Collective and Class Members Do Not Have the Ability to Alter their Opportunity for Profit and Loss.**

83. Defendants, not the exotic dancer employees such as Plaintiff, manage all aspects of the business operation including attracting investors, establishing working

hours and hours of operations, setting the atmosphere, coordinating advertising, hiring, selling a club's real and personal property, and controlling the staff. Defendants alone take the true business risks related to Spearmint Rhino clubs.

84. Exotic dancer employees, such as Plaintiff and the Collective and Class Members, do not control the key determinations for profit and loss of the Spearmint Rhino enterprise.

85. Specifically, Plaintiff was not responsible for any aspect of the enterprise's ongoing business risk.

86. For example, Defendants are responsible for all financing, for the acquisition and/or lease of physical facilities and equipment, for inventory, for the payment of wages of individuals such as managers and bartenders (but not exotic dancer employees), and for obtaining appropriate business insurance, permits, and licenses.

87. Defendants, not exotic dancer employees, establish the minimum dance tip amounts that should be collected from patrons when dancing. Exotic dancer employees are not charged with the authority to accept a lower rate.

88. The tips received by exotic dancer employees are not a return on a capital investment. They are a gratuity for services rendered. From this perspective, it is clear that a dancer's supposed "return on investment" is no different than that of a waiter who serves food during a customer's meal at a restaurant.

#### 4. Skill and Initiative of a Person in Business for Themselves – Working as an Exotic Dancer Employee for Defendants Does Not Require Special Skill or Initiative.

89. Plaintiff and the Collective and Class Members do not exercise the skill and initiative of those in business for themselves.

90. Plaintiff and the Collective and Class Members are not required to have any specialized or unusual skills to work at Defendants' nightclubs.

91. Prior dance experience is not required as a prerequisite to employment.

92. Exotic dancers are not required to attain a certain level of skill in order to dance at Defendants' club.

93. There are no certification standards for dancers.

94. There are no dance seminars, no specialized training, no instructional booklets, and no choreography provided or required in order to work at Defendants' club. The dance skills utilized are commensurate with those exercised by ordinary people.

95. Plaintiff, like the Collective and Class Members, did not have the opportunity to exercise business skills and initiative necessary to elevate her status to that of an owner of Spearmint Rhino.

96. Exotic dancer employees exercise no business management skills.

97. Exotic dancer employees do not maintain separate business structures or facilities.

98. Exotic dancer employees do not actively participate in any effort to increase the nightclub's client base, enhance goodwill, or establish contracting possibilities.

99. The scope of a dancer's initiative is restricted to decisions involving what clothing to wear (within Defendants' guidelines) or how provocatively to dance.

100. Plaintiff and the Collective and Class Members are not permitted to hire or contract other qualified individuals to provide dances to patrons and increase the club's revenue as an owner of the club would.

**5. Permanency – Plaintiff and the Collective and Class Members Worked Exclusively for Defendants for Indefinite Periods of Time.**

101. Plaintiff worked exclusively for Defendants while employed as an exotic dancer at a Spearmint Rhino club.

102. Plaintiff was not employed for a set term, but rather anticipated that her employment with Spearmint Rhino would be on an ongoing basis.

103. On information and belief, many exotic dancer employees work exclusively for Defendants for protracted periods of time, often for years at a time.

**6. Integral Part of Employer's Business – Plaintiff and the Collective and Class Members are Essential to the Success of Defendants' Business.**

104. Plaintiff and the Collective and Class Members are essential to the success of Defendants' nightclubs.

105. The continued success of nightclubs such as Defendants' turns upon the provision of dances by exotic dancers for the nightclub's patrons.

106.    In fact, the sole reason establishments like the Spearmint Rhino exists is to showcase exotic dancers' physical attributes for customers of the business.

107.    Moreover, Defendants are able to charge higher admission prices and a much higher price for their drinks than a comparable establishment without dancers because exotic dancers are the main attraction of such clubs.

108.    As a result, the exotic dancer employees are an integral part of Defendants' business.

109.    The foregoing demonstrates that dancers like Plaintiff and the Collective and Class Members are economically dependent on Defendants and subject to significant control by Defendants.

110.    Therefore, Plaintiff and the Collective and Class Members are employees, not business owners, and should have been paid minimum wage at all times that they worked at Defendants' clubs.

111.    Similarly, Plaintiff and the Collective and Class Members should have been afforded all rights and benefits of an employee pursuant to relevant state and federal law, including the payment of overtime wages whenever they worked over forty hours in a given workweek or over eight hours in a given day in the state of California.

112.    All actions described above are willful, intentional, and the result of design rather than mistake or inadvertence. Defendants were aware that the FLSA applied to the operation of their clubs at all relevant times and were aware of the economic realities test under which its exotic dancers are clearly employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

113.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

114.    All conditions precedent to this suit, if any, have been fulfilled.

115.    At all times relevant to this lawsuit, Defendants are/were eligible and covered employers under the FLSA pursuant to 29 U.S.C. § 203(d).

116.    At all times relevant to this lawsuit, Defendants are/have been enterprises engaged in commerce under the FLSA pursuant to 29 U.S.C. § 203(s)(1)(A).

117.    At all times relevant to this lawsuit, Defendants have employed, and continue to employ, employees including Plaintiff and the Collective Members who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

118.    At all relevant times, Defendants have had gross operating revenues or business volume in excess of $500,000.

119.    At all relevant times, Plaintiff and the Collective Members were employees of Defendants pursuant to the FLSA.

120.    On information and belief, during the three years preceding the filing of this action more than one thousand exotic dancers have worked at Spearmint Rhino locations nationwide, all without receiving any wages from Defendants.

121.    During the relevant time period, neither Plaintiff nor any of the Collective Members received money from Defendants in the form of wages, nor did they receive

any other category of compensation (*e.g.*, bonuses, shift differentials, *per diem* payments) from Defendants.

122. Plaintiff and the Collective Members generated their income solely through tips they received from Defendants' customers when they performed dances for those patrons.

123. Nonetheless, Defendants imposed a fee schedule that required Plaintiff and the Collective Members to pay for the privilege of dancing at Spearmint Rhino locations.

124. Defendants assessed a daily house fee to be paid by Plaintiff and the Collective Members per shift and additionally demanded a portion of the gratuity an exotic dancer would receive per dance.

125. The money that Plaintiff and the Collective Members would receive from customers at Spearmint Rhino locations is a tip, not a service charge as those terms are defined in relevant FLSA regulations. *See* 29 C.F.R. §§ 531.52, 531.53, & 531.55.

126. Those tips received by Plaintiff and the Collective Members does not become part of the Defendants' gross receipts to be later distributed to the exotic dancers at a given location as wages.

127. Instead, exotic dancers at Spearmint Rhino locations merely pay the club a portion of their tips, which Spearmint Rhino pockets as pure profit.

128. Plaintiff and the Collective Members are tipped employees under the FLSA, as they are engaged in an occupation in which they customarily and regularly receive more than $30 per month in tips. *See* 29 U.S.C. § 203(t).

129.    However, Defendants are not entitled to take a tip credit for the amounts Plaintiff and the Collective Members received as tips.

130.    29 U.S.C. § 203(m) requires an employer to inform its employee that it intends to rely on the tip credit to satisfy its minimum wage obligations.

131.    Here, Defendants affirmatively informed Plaintiff and the Collective Members that they would not be paid wages at all, much less paid a tip credit adjusted minimum wage.

132.    Defendants' contractual scheme to label Plaintiff and the Collective Members as so-called "members" or "partners" of a limited liability company was designed to deny them their fundamental rights as employees to receive minimum wages, overtime, to demand and retain portions of tips given to the Collective Members by Spearmint Rhino customers, and was all done to enhance Defendants' profits.

133.    Defendants' contractual scheme to label Plaintiff and the Collective Members as so-called "members" or "partners" of an LLC rather than employees was willful.

134.    Defendants knew or should have known that Plaintiff and the Collective Members do not share in the benefits and privileges of actual ownership of the Spearmint Rhino.

135.    Furthermore, workers cannot elect to be treated as members of a limited liability company instead of employees. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d

748, 755 (9th Cir. 1979) ("Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA.").

136.  Nor can workers agree to be paid less than the minimum wage. *See Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161 177 (1945).

137.  Neither of the aforementioned legal concepts are new to Defendants. This is not Defendants' first attempt to contract around state and federal wage laws in order to deprive their employees of their rightfully earned wages. Defendants know, or should have known, their LLC "member" or "partner" agreements are in violation of state and federal law.

138.  Finally, federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2.

139.  Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b).

140.  Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

141. Defendants have failed to keep the aforementioned records despite their prior dealings with numerous wage and hour lawsuits. Defendants' continual failure to comply with and disregard of the FLSA's record keeping provision is willful and in violation of the law.

142. Plaintiff seeks to bring her claims under the FLSA on behalf of herself and all other exotic dancers who worked for the Spearmint Rhino in the three years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered.

143. Plaintiff has actual knowledge that Collective Members have been denied wages for all hours worked in each workweek.

144. Plaintiff worked with other dancers at a Spearmint Rhino Dames N' Games location.

145. As such, she has personal knowledge of the pay violations.

146. Furthermore, other exotic dancer employees at Defendants' establishments have shared with her that they experienced similar pay violations as those described in this complaint.

147. Other employees similarly situated to Plaintiff work or have worked for Defendants at their nightclub locations without being paid a wage.

148. The Collective Members are similarly situated to Plaintiff in all relevant respects, having performed the same work duties as Plaintiff and being similarly situated with regard to Defendants pay practices.

149.   The Collective Members regularly work or have worked in excess of forty hours during a workweek.

150.   The Collective Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

151.   The Collective Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as supposed "members" or "partners" of the DG Hospitality Van Nuys, LLC, and/or the denial of overtime and minimum wage.

152.   Defendants' failure to pay overtime compensation and minimum wages results from generally applicable policies or practices, and does not depend on the personal circumstances of the Collective Members.

153.   The experiences of Plaintiff with respect to her pay, or lack thereof, is typical of the experiences of the Collective Members.

154.   The specific job titles or precise job responsibilities of each Collective Member does not prevent collective treatment.

155.   Although the exact amount of damages may vary among the Collective Members, the damages are easily calculable using a simple formula uniformly applicable to all of the exotic dancer employees.

156.   Plaintiff proposes that the class of putative Collective Action Members be defined as:

> **All natural persons who have worked or continue to work as exotic dancers at any Spearmint Rhino location in the United States within the past three years.**

# CALIFORNIA STATE LAW CLAIMS

157.   Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

158.   California law requires employers to pay all wages due to an employee immediately upon discharge and within the time required by law after their employment ends. Cal. Labor Code §§ 201, 202. Should an employer willfully fail to timely pay its employee, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days wages. Cal. Labor Code § 203.

159.   Defendants' scheme to categorize Plaintiff and the Class Members as so-called "members" or "partners" of an LLC while otherwise treating them as employees, on information and belief, involved retention of certain money to be paid to Plaintiff and the California Class under the auspices of a shareholder distribution payable pursuant to a tax Schedule K-1.

160.   An indefinite sum of money was promised to Plaintiff pursuant to this scheme.

161.   When Plaintiff left her employment with Defendants, on information and belief, money was owed to her under this scheme.

162.   Plaintiff has not received any money pursuant to the promise to date.

163.   As Plaintiff was an employee of Spearmint Rhino, Defendants' retention of money owed to her was a violation of California State Law.

164.   On information and belief, this pay practice is applicable to certain members of the California Class who are former employees of Spearmint Rhino who were promised shareholder distributions payable pursuant to a tax Schedule K-1.

165.   California law does not permit an employer to receive any part of a gratuity or tip, nor does it permit an offset or reduction against minimum wages due to employees based on tips received. Cal. Labor Code § 351.

166.   Likewise, California law does not permit tip-splitting with managers who have the ability to hire, discharge, supervise, direct or control the acts of an employee, as those managers are agents of the employer. Cal. Labor Code § 350. *See also*, *Jameson v. Five Feet Rest., Inc.*, 107 Cal. App. 4th 138, 143-144 (Cal. Ct. App. 2003).

167.   Throughout the time period relevant to this claim for relief, Plaintiff and the California Class were required to tender tips to Defendants and those tips were unlawfully split with managers with the ability to hire, discharge, supervise, direct or control Plaintiff and the California Class.

168.   Throughout the time period relevant to this claim for relief, Plaintiff and the California Class, defined below, were required to tender tips to Defendants and those tips were unlawfully split with managers with the ability to hire, discharge, supervise, direct or control Plaintiff and the California Class.

169.    California Labor Code § 351 does not provide a private cause of action for employees to recover misappropriated tips. *See also, Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 603-604 (Cal. 2010) (suggesting such claims could be pursued under theory of common law conversion).

170.    However, the violation has been found actionable under California's Unfair Competition Law ("UCL"). *See Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d 1035, 1038-1039 (C.D. Cal. 2006) (permitting restitution).

171.    When on shift, Plaintiff and the California Class routinely worked in excess of five hour shifts.

172.    During their shifts, they were not permitted to take meal breaks during which time they were relieved of all duty.

173.    Moreover, Plaintiff and the California Class routinely worked in excess of four hours without being relieved of all duty for a ten-minute rest period.

174.    Plaintiff and the California Class never received timely, accurate, itemized wage statements including their hours of work completed.

175.    Defendants' actions described herein with regard to Plaintiff and the California Class were willful, intentional, and not the result of mistake or inadvertence.

176.    Defendants were aware that the California Labor Code, and other laws of the State of California applied to their operation of Spearmint Rhino locations at all relevant times, and that under the relevant test Plaintiff and the putative California Class were employees of Spearmint Rhino, not true members of an LLC.

177.   Defendants were aware of and/or the subject of previous litigation, *Trauth*, and enforcement actions relating to wage and hour law violations where the misclassification of exotic dancers as independent contractors was challenged, and refused to change their business arrangements in accord with prior Court Order.

178.   Defendants were aware that their failure to pay minimum wage, overtime compensation, and that their retention of tips paid to Plaintiff and the California Class were unlawful pursuant to California State Law.

179.   Defendants were also aware that their policy to categorize Plaintiff and the putative California Class as so-called members of an LLC while otherwise treating them as employees is a violation of the relevant economic reality test for employees.

180.   Despite prior litigation in this exact District, Defendants continued to require Plaintiff and the California Class to pay for the privilege of dancing at Spearmint Rhino locations, to tender tips earned to Defendants, and did not pay Plaintiff and the putative California Class minimum or overtime wages.

181.   Plaintiff brings her claims for relief under California State Law, listed above, for violations of California's wage and hour laws as a class action, pursuant to FED. R. CIV. P. 23(a), (b)(2), & (b)(3).

182.   Plaintiff proposes that the class be defined as:

> **All natural persons who have worked or continue to work as exotic dancers at any Spearmint Rhino location in the State of California within the past four years.**

183. **Numerosity**: The California Class is so numerous that joinder of all members is impracticable. On information and belief, during the relevant time period at least one hundred individuals worked for Defendants in the State of California.

184. **Commonality**: Common questions of law and fact exist as to putative members of the California Class, including, but not limited to, the following:

a. Whether Defendants unlawfully failed to pay all wages owed in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210, and the California Labor Code and related regulations including the California Private Attorneys General Act, ("PAGA"), Cal. Wage Order No. 10-2001; Cal. Labor Code §§ 200-2699.5;

b. Whether Defendants maintained a policy or practice of misclassifying the California Class as members of an LLC as opposed to employees;

c. Whether Defendants unlawfully failed to keep and furnish the California Class with records of hours worked, in violation of Cal. Labor Code §§ 226 & 1174;

d. Whether Defendants unlawfully failed to provide the California Class with meal and rest breaks, in violation of Cal. Labor Code §§ 226.7 & 512;

e. Whether Defendants' policy and practice of failing to pay the California Class all wages due immediately upon discharge violates the California Wage Payment Provisions elaborated above;

f. Whether Defendants' policy and practice of failing to pay the California Class all wages due within the time required by law after their employment ends violates California law; and

g. The proper measure of damages sustained by the California Class.

185. **Typicality**: Plaintiff's claims are typical of those of the California Class. Plaintiff, like other California Class members, were subjected to Defendants' policy and practice of refusing to pay wages owed to its exotic dancer employees in violation of California law. Plaintiff's job duties and claims are typical of those of the California Class.

186. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the California Class.

187. **Adequacy of Representation**: Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation. Plaintiff's counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law. Plaintiff's counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all of the California Class.

188. Class certification of the California State Law claims is appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the putative California Class, making appropriate declaratory and injunctive relief with respect to the Plaintiff and the California Class as a

whole. Plaintiff is entitled to injunctive relief to end Defendants' common and uniform practice of treating its exotic dancers as employees while misclassifying them as owners of an LLC.

189. **Predominance**: Questions of law and fact common to members of the California Class predominate over any questions which may affect only individual members.

190. **Superiority**: Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The losses, injuries, and damages are small as relevant to a class action analysis, such that without class treatment, individual action by each Class member would be cost-prohibitive.

191. The Class members are also readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are known to Defendants. The number and identity of the Class members are determinable from the records of Defendants.

192. The representatives and their chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to efficiently and effectively prosecute this action. In addition, the representative's attorneys are competent in the relevant areas of the law and have

sufficient experience to vigorously represent the Class. Furthermore, the resources available to counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiff's attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.

193.    Plaintiff also brings this action as an aggrieved employee on behalf of herself and other current former employees pursuant to the California Private Attorneys General Act ("PAGA") of 2004, Cal. Labor Code §§ 2698-2699.5.

## CAUSES OF ACTION

### COUNT 1
### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### (on behalf of the FLSA Collective)

194.    Plaintiff, on behalf of herself and the proposed Collective, repeats and realleges all preceding paragraphs as if fully set forth herein.

195.    Although misclassified as so-called "members" or "partners" of an LLC, Plaintiff and the Collective Members are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* 29 U.S.C. § 203(e)(1).

196.    Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the Collective Members. *See* 29 U.S.C. § 203(d).

197.    Defendants were, and are, required to pay their employees, Plaintiff and the Collective Members, at least the minimum wage for all hours worked under forty in a given workweek. 29 U.S.C. § 206.

198.    Defendants failed to pay Plaintiff and the Collective Members the federally-mandated minimum wage for all hours worked under forty in a given workweek. Defendants did not pay Plaintiff and Collective Members at all.

199.    Defendants were, and are, required to pay their employees, Plaintiff and the Collective Members, overtime premiums in an amount of one and one half times their regular rate of pay for all hours worked over forty hours in a given workweek. 29 U.S.C. § 207.

200.    Defendants failed to pay Plaintiff and the Collective Members their federally mandated overtime wages for all hours worked over forty in a given workweek.

201.    Defendant also unlawfully retained certain tips paid Plaintiff and the Collective Members. Those tips were the sole property of Plaintiff and the Collective Members, and were not made part of Defendants' gross receipts. 29 C.F.R. §§ 531.52, 531.53, & 531.55.

202.    Furthermore, no tip credit applies to reduce or offset Defendants' liability under the FLSA, because Defendants did not inform Plaintiff and the Collective Members that they would be applying a tip credit to satisfy a portion of the statutory minimum wage, nor Plaintiff and the Collective Members retain all tips except those

included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m).

203.    Accordingly, Plaintiff and the putative Collective Members are entitled to the full statutory minimum wages set forth in 29 U.S.C. § 206 & 207.

204.    Defendants' conduct was willful and done to avoid paying minimum wages and overtime. 29 U.S.C. § 255(a). Therefore, Plaintiff and the Collective Members are entitled to a three-year statute of limitations.

205.    Plaintiff and the Collective Members seek all damages to which they are entitled under the FLSA, including their back minimum wages, back overtime wages, liquidated damages, attorneys' fees and costs, post-judgment interest, and specifically plead recovery for the three-year period preceding the filing of this lawsuit through its resolution.

**COUNT 2**
**VIOLATIONS OF CALIFORNIA UNFAIR**
**COMPETITION LAW, CAL. BUS. & PROF. CODE, §§ 17200-17210**
**(on behalf of the California Class)**

206.    Plaintiff, on behalf of herself and the proposed California Class, repeats and realleges all preceding paragraphs as if fully set forth herein.

207.    Although misclassified as so-called "members" or "partners" of an LLC, Plaintiff and the California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

208. Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

209. The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. The UCL prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices.

210. Beginning at some point after the *Trauth* case, which was resolved more than four years ago, Defendants committed and continue to commit, acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein.

211. Defendants' conduct as herein alleged has injured Plaintiff and the California Class by wrongfully denying them earned wages, and therefore was substantially injurious to Plaintiff and the California Class.

212. Defendants engaged in unfair competition in violation of the UCL by violating, *inter alia*, each of the following laws.

213. Each of these violations constitutes an independent and separate violation of the UCL:

   a. The Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262;

   b. California Labor Code § 1194, which provides in pertinent part:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit;

c. California Labor Code § 1182.12, which provides in pertinent part:

Notwithstanding any other provision of this part, on and after July 1, 2014, the minimum wage for all industries shall be not less than nine dollars ($9) per hour, and on and after January 1, 2016, the minimum wage for all industries shall be not less than ten dollars ($10) per hour;

d. California Labor Code § 1182.13 and MW-2017, setting minimum wage for 2017 at $10.50 for employers with 26 or more employees;

e. California Labor Code §§ 201-203, 226, 226.7, and 512;

f. California Labor Code § 1174;

g. California Labor Code § 510, which provides in relevant part:

Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee; and

h. California Labor Code § 351.

214. Defendants' course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL.

215. Defendants' conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

216. The unlawful and unfair business practices and acts of Defendants, described above, have injured Plaintiff and the California Class in that they were wrongfully denied payment of earned wages.

217. Plaintiff, on behalf of herself and the California Class, seeks restitution in the amount of the respective unpaid wages earned and due at a rate of not less than the minimum wage for all hours worked under forty in a given workweek or under eight on a given day, and overtime wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, or eight hours in a day, or for the first eight hours of work performed on the seventh consecutive day of work, and double the regular rate of pay for work performed in excess of twelve hours per day and for all work over eight hours on the seventh consecutive day of work in a workweek.

218. Plaintiff seeks recovery of attorneys' fees and costs of this action to be paid by Defendants, as provided by the UCL and California Labor Code §§ 218, 218.5, & 1194.

## COUNT 3
## VIOLATIONS OF CALIFORNIA LABOR CODE
### (Failure to Pay Statutory Minimum Wages)
### (on behalf of the California Class)

219.    Plaintiff, on behalf of herself and the proposed California Class, repeats and realleges all preceding paragraphs as if fully set forth herein.

220.    Although misclassified as so-called "members" or "partners" of an LLC, Plaintiff and the California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

221.    Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

222.    The California Labor Code requires that all employees be paid minimum wages by their employers. The current California Minimum Wage is $10.50. Cal. Labor Code. § 1182.12, MW-2017. Before January 1, 2017, the California Minimum Wage was $10.00; before January 1, 2016, the California Minimum Wage was $9.00; and before July 1, 2014, the California Minimum Wage was $8.00.

223.    The California Minimum Wage is and has, at all times relevant to this lawsuit, always been higher than the minimum wage required by the FLSA.

224.    Therefore, the higher California Minimum Wage applies to Plaintiff and all members of the California Class, defined below. 29 U.S.C. § 218(a).

225.   Defendants' policy and practice of classifying Plaintiff and the California Class as so-called "members" or "partners" of an LLC while treating them otherwise as employees resulted in a violation of these minimum wage provisions.

226.   As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and the California Class have sustained damages, including loss of earnings for hours worked under forty in a workweek, or under eight hours per day ("straight time") during the period relevant to this lawsuit in an amount to be established at trial, prejudgment interest, liquidated damages in an amount equal to the back wages and costs and attorneys' fees, pursuant to statute and other applicable law. *See* Cal. Labor Code § 1194.2 (authorizing liquidated damages for an employer's failure to pay minimum wages).

**COUNT 4**
**VIOLATIONS OF CALIFORNIA LABOR CODE**
**(Failure to Pay Statutory Overtime)**
**(on behalf of the California Class)**

227.   Plaintiff, on behalf of herself and the proposed California Class, repeats and realleges all preceding paragraphs as if fully set forth herein.

228.   Although misclassified as so-called "members" or "partners" of an LLC, Plaintiff and the  California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

-43-

229. Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

230. California law requires an employer to pay overtime compensation to all nonexempt employees at a rate of overtime compensation at a rate of one and one-half times the regular rate of pay for all hours worked over forty per week, or over eight per day, or for the first eight hours of work on the seventh consecutive day of work in a workweek, and at a rate of twice the regular rate of pay for all hours worked in excess of 12 hours in one day, and for any hours worked in excess of eight hours on the seventh consecutive day of work in a workweek. Cal. Labor Code § 510.

231. California wage and hour laws provide greater protections for workers than the FLSA.

232. Therefore, California wage and hour laws apply to Plaintiff and all members of the California Class, defined below, where they provide greater protections to workers. 29 U.S.C. § 218(a).

233. Throughout the time period relevant to this claim for relief, Plaintiff and the California Class worked in excess of eight hours in a workday and/or forty hours in a workweek.

234. Plaintiff and the California Class also sometimes worked in excess of twelve hours in one day and for over eight hours on a seventh consecutive day of work.

235.   Defendants' policy and practice of classifying Plaintiff and the California Class as so-called "members" or "partners" of an LLC while treating them otherwise as employees resulted in a violation of these overtime wage provisions.

236.   As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and the California Class have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

## COUNT 5
## VIOLATIONS OF CALIFORNIA LABOR CODE
### (Failure to Pay Meal and Rest Provisions)
### (on behalf of the California Class)

237.   Plaintiff, on behalf of herself and the proposed California Class, repeats and realleges all preceding paragraphs as if fully set forth herein.

238.   Although misclassified as so-called "members" or "partners" of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

239.   Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

240. Plaintiff and the California Class routinely work and have worked in excess of five-hour shifts without being afforded at least a half-hour meal break in which they were relived of all duty, and more than ten-hour shifts without being afforded a second half-hour meal break in which they were relieved of all duty, as required by California Labor Code §§ 226.7 & 512 and Wage Order No. 10-2001, § 11(A) & (B).

241. In addition, Plaintiff and the putative California Class regularly work and have worked without being afforded at least one ten-minute rest break, in which they were relieved of all duty, per four hours of work performed or major fraction thereof, as required by California Labor Code § 226.7 and Wage Order No. 10-2001, § 12.

242. As a result of Defendants' failure to afford proper meal periods, they are liable to Plaintiff and the putative California Class for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to California Labor Code § 226.7 and Wage Order No. 10-2001, § 11(D).

243. As a result of Defendants' failure to afford proper rest periods, they are liable to Plaintiff and the California Class for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to § 226.7 and Wage Order No. 10-2001, § 12(B).

## COUNT 6
## VIOLATIONS OF CALIFORNIA LABOR CODE
### (Failure to Keep Records)
### (on behalf of the California Class)

244.    Plaintiff, on behalf of herself and the proposed California Class, repeats and realleges all preceding paragraphs as if fully set forth herein.

245.    Although misclassified as so-called "members" or "partners" of an LLC, Plaintiff and the California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

246.    Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

247.    Defendants knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, *inter* alia, hours worked, to Plaintiff and the putative California Class in accordance with California Labor Code § 226(a) and the applicable IWC Wage Order. Such failure caused injury to Plaintiff and the California Class by, among other things, impeding them from knowing the amount of wages to which they were and are entitled. On information and belief, at all times relevant herein, Defendants have failed to maintain records of hours worked by Plaintiff and the California Class as required under California Labor Code § 1174(d).

248.   Plaintiff and the putative California Class are entitled to and seek injunctive relief requiring Defendants to comply with Labor Code §§ 226(e) & 1174(d), and further seek the amount provided under Labor Code §§ 226(e) & 1174.5, including the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period.

**COUNT 7**
**VIOLATIONS OF CALIFORNIA LABOR CODE**
**(California Wage Payment)**
**(on behalf of the California Class)**

249.   Plaintiff, on behalf of herself and the proposed California Class, repeats and realleges all preceding paragraphs as if fully set forth herein.

250.   Although misclassified as so-called "members" or "partners" of an LLC, Plaintiff and the putative California Class are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code § 350(b).

251.   Defendants were, at all times relevant to this claim for relief, joint employers of Plaintiff and the California Class pursuant to California law and all other relevant law. *See* Cal. Labor Code §350(a).

252.   California Labor Code §§ 201 and 202 require Defendants to pay their employees all wages due within the time specified by law.

253. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

254. Plaintiff and the California Class members who ceased employment with Defendants are entitled to unpaid compensation and other monies, as alleged above, but to date have not received such compensation.

255. More than thirty days have passed since Plaintiff and certain California Class members left Defendants' employ.

256. As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, Plaintiff and the California Class members whose employment ended during the class period are entitled to thirty days' wages under Labor Code § 203, together with interest thereon and attorneys' fees and costs.

**COUNT 8**
**VIOLATIONS OF CALIFORNIA LABOR CODE**
**(California PAGA Claims)**
**(on behalf of the California Class)**

257. Plaintiff, on behalf of herself and the proposed California Class, repeats and realleges all preceding paragraphs as if fully set forth herein.

258. Although misclassified as so-called "members" or "partners" of an LLC, Plaintiff and the California Class are nonexempt employees entitled to be paid overtime

-49-

compensation for all overtime hours worked, as defined above. *See* Cal. Labor Code §
350(b).

259.     Defendants were, at all times relevant to this claim for relief, joint
employers of Plaintiff and the California Class pursuant to California law and all other
relevant law. *See* Cal. Labor Code §350(a).

260.     Under the California Private Attorneys General Act ("PAGA") of 2004,
Cal. Labor Code §§ 2698-2699.5, an aggrieved employee, on behalf of himself or herself
and other current or former employees as well as the general public, may bring a
representative action as a private attorney general to recover penalties for an employer's
violations of the California Labor Code and IWC Wage Orders. These civil penalties are
in addition to any other relief available under the California Labor Code, and must be
allocated 75% to California's Labor and Workforce Development Agency and 25% to
the aggrieved employee. Cal. Labor Code § 2699.

261.     Although misclassified as so-called "members" or "partners" of an LLC,
Plaintiff and the putative California Class are nonexempt employees entitled to be paid
overtime compensation for all overtime hours worked, as defined above. *See* Cal. Labor
Code § 350(b).

262.     Defendants were, at all times relevant to this claim for relief, joint
employers of Plaintiff and the California Class pursuant to California law and all other
relevant law. *See* Cal. Labor Code §350(a).

263.   Pursuant to Cal. Labor Code § 1198, Defendants' failure to pay proper compensation to Plaintiff and the California Class, failure to keep and furnish them with records of hours worked, failure to provide them with meal and rest breaks, misappropriation of tips, and failure to pay them all wages due immediately upon discharge and within the time required by law after their employment ended is unlawful and constitutes violations of the California Labor Code, each actionable under PAGA.

264.   Plaintiff alleges, on behalf of herself and the putative California Class, as well as the general public, that Defendants have violated the following provisions of the California Labor Code and the following provisions of California Wage Orders that are actionable through the Cal. Labor Code and PAGA, as previously alleged herein: Cal. Wage Order No. 10-2001, Cal. Labor Code §§ 201-203, 510, 512, 1174, 1174.5, 1182.11, 1182.12, 1194.

265.   Each of these violations entitles Plaintiff, as a private attorney general, to recover the applicable statutory civil penalties on her own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

266.   Cal. Labor Code § 2699(a), which is part of PAGA, provides in pertinent part:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3.

267.     Plaintiff is entitled to civil penalties to be paid by Defendants and allocated as PAGA requires, pursuant to Cal. Labor Code § 2699(a), for Defendants' violations of the California Labor Code and relevant IWC Wage Orders for which violations a civil penalty is already specifically provided by law. Further, Plaintiff is entitled to civil penalties to be paid by Defendants and allocated as PAGA requires, pursuant to § 2699(f) for Defendants' violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is not already specifically provided.

268.     On May 2, 2017, Bracy provided written notice by certified mail and electronic submission to the California Labor & Workforce Development Agency ("LWDA") and to Defendants through their respective registered agents of the legal claims and theories of this case contemporaneously with the filing of the Complaint in this action. Plaintiff awaits a response from the LWDA with regard to whether it will investigate the actions in the aforementioned written notice. Accordingly, Plaintiff has taken necessary steps to exhaust her administrative remedies, and will amend her pleadings in connection with such exhaustion.

269.     Under PAGA, Plaintiff and the State of California are entitled to recover the maximum civil penalties permitted by law for the violations of the California Labor Code and Wage Order No. 5 that are alleged in this Complaint.

## JURY DEMAND

270. Plaintiff hereby demands a jury trial on all causes of action and claims for relief with respect to which she and the putative Collective and California Class Action Members have a right to jury trial.

## PRAYER FOR RELIEF

271. Plaintiff, on behalf of herself and the Collective and California Class Action members, respectfully request that this Court award the following relief:

a. An order conditionally certifying this case as an FLSA collective action and requiring notice to be issued to all Collective Members;

b. An order certifying that the California State Law Claims may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23;

c. Designation of Jenetta L. Bracy as a Representative of the California Class Action Members;

d. Designation of attorneys Jennifer Liakos, Salvatore C. Badala, and Paul B. Maslo of Napoli Shkolnik PLLC, as Class Counsel for the California Class Action Members;

e. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and California State law;

f. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with

Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

g. An award of damages including all unpaid wages at the FLSA or state-mandated minimum wage rate, overtime compensation for all hours worked over forty in a workweek or, in California, over eight hours in a day and for the first eight hours worked on the seventh consecutive day of work in a workweek at the applicable time and one half rate, and at the relevant double time rate for hours worked over twelve in a given day and for all hours over eight worked on the seventh consecutive day of work in a workweek, and all misappropriated tips, liquidated damages, and restitution to be paid by Spearmint Rhino;

h. Appropriate statutory penalties;

i. Costs of action incurred herein, including expert fees;

j. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

k. Pre-judgment and post-judgment interest, as provided by law; and

l. Such other injunctive and equitable relief as the Court may deem just and proper.

Dated: May 3, 2017          NAPOLI SHKOLNIK PLLC

*/s/ Jennifer Liakos*

Jennifer Liakos
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Fax: (646) 843-760
Email: jliakos@napolilaw.com

Salvatore C. Badala (to be admitted *pro hac vice*)
Paul B. Maslo (to be admitted *pro hac vice*)
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: sbadala@napolilaw.com
          pmaslo@napolilaw.com

*Counsel for Plaintiff*